UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| RICHARD R. MORRIS, III, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11-cv-154 |
| | ) | |
| v. | ) | Honorable Joseph G. Scoville |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **OPINION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking

review of a final decision of the Commissioner of Social Security denying plaintiff's claims for

disability insurance benefits (DIB) and supplemental security income benefits (SSI).  On September

18, 2006, plaintiff filed his applications for benefits alleging a November 1, 2002 onset of disability.[1]

(A.R. 129-36).  Plaintiff was in prison or jail during a substantial portion of the period from his

alleged onset of disability through the date of the ALJ's decision.  He is generally not eligible to

receive social security benefits for any months he was confined in a jail or prison.  *See* 42 U.S.C. §§

402(x)(1)(A), 1382(e)(1)(A); 20 C.F.R. §§ 404.468, 416.1325.  He was in prison "between

December 9, 2004, and October 16, 2006" on his felony conviction for domestic violence, third

_____

[1]September 18, 2006 is a "protective filing date."  It is the term for the first time an individual
contacts the Social Security Administration about filing for benefits.  *See*
http://www.ssa.gov/glossary.htm (last visited Oct. 10, 2012).  A protective filing date allows an
individual to have an earlier application date than the date the signed application is actually filed.
*Id.*  Here, it allowed plaintiff to have a filing date before he was released from prison.

offense.[2]  (Plf. Brief at 6, docket # 13; A.R. 43, 493).  He was held in custody at the county jail from June 2004, until he began serving his prison sentence.  He testified that he went to jail every six months.  (A.R. 53; *see also* A.R. 241).  Elsewhere, he stated that he had been incarcerated nine or ten times.  (A.R. 284).  It is difficult to determine with precision plaintiff's months of prison or jail confinement from his medical records.  It is assumed for analytical purposes that he was eligible to receive social security benefits during some portion of the period at issue.  Plaintiff's disability insured status expired on June 30, 2006.  A claimant for DIB benefits must present evidence demonstrating that he was disabled before his disability insured status expired.  *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's incarceration impacts his earliest possible entitlement to SSI benefits.  In September 2006, plaintiff contacted the Social Security Administration from prison, resulting in the assignment of a protective filing date before his release from custody.  SSI benefits are not awarded retroactively for months prior to the application for benefits.  20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  Ordinarily, October 2006 would have been plaintiff's earliest possible entitlement to SSI benefits, but his incarceration rendered him ineligible to receive social security benefits in October.  Thus, November 2006 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff's claims for DIB and SSI benefits were denied on initial review.  (A.R. 69-77).  On March 5, 2009, he received a hearing before an administrative law judge (ALJ), at which

---

[2]Plaintiff had at least six earlier criminal convictions.  (A.R. 495).  In 2000, he was convicted of domestic violence against his girlfriend and served 1 year of his 2 months-to-2 year sentence.  (A.R. 505).

he was represented by counsel.  (A.R. 28-65).  On March 24, 2009, the ALJ issued a decision finding

that plaintiff was not disabled.  (A.R. 18-27).  On December 9, 2010, the Appeals Council denied

review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's

decision denying his claims for DIB and SSI benefits.  Pursuant to 28 U.S.C. § 636(c) and Rule 73

of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States

magistrate judge conduct all further proceedings in this case, including entry of final judgment.

(docket # 11).  Plaintiff asks the court to overturn the Commissioner's decision on the following

grounds:

1.  The Commissioner committed reversible error at step two of the sequential analysis when he failed to "properly assess plaintiff's mental illness as a severe impairment[;]"

2.  The Commissioner "erred in assigning a flawed Residual Functional Capacity and in failing to assign controlling weight to treating specialists' opinions as demonstrated in the record according to 20 C.F.R. § 404.1527(d)(2)[;]" and

3.  The Commissioner "erred by failing to adhere to [his] own administrative procedures when the ALJ failed to provide all relevant evidence to the medical expert and when the ALJ failed to send evidence obtained after the hearing to the medical expert who attended the hearing."

(Statement of Issues, Plf. Brief at 1, docket # 13).  Upon review, the Commissioner's decision will

be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to

determine whether the Commissioner's findings are supported by substantial evidence and whether

the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124,

125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, No. 11-2304, ___ F.3d ___, 2012 WL 3871353, at * 4 (6th Cir. Sept. 7, 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."  42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference."  *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently."  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the

conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see*

*Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **Discussion**

   The ALJ found that plaintiff met the disability insured requirement of the Social

Security Act from November 1, 2002, through June 30, 2006, but not thereafter. (A.R. 20).  Plaintiff

had not engaged in substantial gainful activity on or after November 1, 2002.  (A.R. 20).  The ALJ

found that plaintiff had the following severe impairments: "degenerative disc disease and personality

disorder (anger)."  (A.R. 20-21).   Plaintiff did not have an impairment or combination of

impairments which met or equaled the requirements of the listing of impairments.  (A.R. 21).  The

ALJ found that plaintiff retained the residual functional capacity (RFC) to perform light work "not

involving public contact or more than superficial contact with supervisors and co-employees." (A.R.

23).  The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully

credible.  (A.R. 23-24).  Plaintiff was unable to perform his past relevant work.  (A.R. 24-25).

Plaintiff was 27-years-old as of his alleged onset of disability, 31-years-old when his disability

insured status expired, and 33-years-old as of the date of the ALJ's decision.  Thus, at all times

relevant to his claims for DIB and SSI benefits, plaintiff was classified as a younger individual.

(A.R. 25).  Plaintiff has at least a high-school education and is able to communicate in English.

(A.R. 25).  Plaintiff has no transferable work skills within his RFC.  (A.R. 25).  The ALJ then turned

to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a

person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that

there were approximately 38,500 jobs in the region that the hypothetical person would be capable

of performing.  (A.R. 61-62).  The ALJ found that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.[3]  (A.R. 26-27).

## 1.

Plaintiff relies on medical records generated after the administrative hearing and never presented to the ALJ.  (Plf. Brief at 10, 15; Reply Brief at 5).  This is patently improper.  It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review.[4]  This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ.  The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the

---

[3]Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction.  *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004).  The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to his disability. *See Cage v. Commissioner*, No. 09-4530-cv, __ F.3d __, 2012 WL 3538264, at * 4-6 (2d Cir. Aug. 17, 2012); *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004).  Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability.

[4]Plaintiff argues that the Appeals Council committed error when it failed to consider evidence that he submitted in support of his application for discretionary review.  (Reply Brief at 5).  The scope of the court's review is defined by statute, and does not encompass the Appeals Council's discretionary decision whether to grant review.  *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review.").

ALJ.  *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also  Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ.").  The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Cline*, 96 F.3d at 148.

Plaintiff's reply brief concludes with a request for remand "for evaluation [of] new and material evidence."  (Reply Brief at 5).  "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)."  *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006).  The statute permits only two types of remand:  a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision.  *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)).  The court cannot consider evidence that was not submitted to the ALJ in the sentence four context.  It only can consider such evidence in determining whether a sentence six remand is appropriate.  *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence he now presents in support of a remand is "new" and "material," and that there is

"good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486.

Plaintiff's entire argument in support of his request for a sentence-six remand is set forth below:

> At page 19 of the Commissioner's brief, there is a contention that there is "no evidence of any surgery in the record." Upon information and belief, the Defendant is fully aware that the medical records of the May 20[0]9 surgery and neurosurgeon's notes were properly submitted to the Appeals Council with the Request for Review of the Administrative Decision on August 27, 2009. The records were appropriately faxed and received as evidenced by receipts submitted herewith as "Appendix A." Failure to consider evidence by the Appeals Council is error. Plaintiff requests remand for evaluation of new and material evidence.

(Reply Brief at 5). Plaintiff cites no supporting legal authority and makes no attempt to address his statutory burden with regard to each additional item of evidence offered. Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007).

Even assuming that plaintiff did not waive the issue, he has not carried his statutory burden with regard to any medical evidence he submitted to the Appeals Council. These materials are not part of the administrative record and are not attached to plaintiff's brief or reply brief. Plaintiff has not provided the court with any new medical evidence. *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84.

Contrary to plaintiff's assumption, "good cause" is not established solely because evidence was not generated until after the ALJ's decision. *Courter v. Commissioner*, No. 10-6119, 2012 WL 1592750, at * 11 (6th Cir. May 7, 2012). The Sixth Circuit has taken a "harder line."

*Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 485. Plaintiff provides no explanation why he waited until after the ALJ's decision to obtain the documents he sent to the Appeals Council. He has not shown good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276. Plaintiff has not addressed, much less carried, his burden with regard to materiality.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. His request for a sentence six remand is denied. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

## 2.

Plaintiff argues that the ALJ committed reversible error at step 2 of the sequential analysis "in failing to properly assess Plaintiff's mental illness as a severe impairment." (Plf. Brief at 12). The finding of a severe impairment at step 2 is a threshold determination. The finding of a single severe impairment is enough and requires continuation of the sequential analysis. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The ALJ found at step 2 of the sequential analysis[5] that plaintiff had the severe impairments of degenerative disc disease

_____

[5]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a

and a "personality disorder (anger)."  (A.R. 20-21).  The ALJ's failure to find additional severe impairments at step 2 is "legally irrelevant."  *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).  The ALJ continued the sequential analysis and considered plaintiff's severe and non-severe impairments in making his factual finding regarding plaintiff's RFC.  (A.R. 20, 23-24).

**3.**

Plaintiff argues that the ALJ "erred in assigning a flawed Residual Functional Capacity and in failing to assign controlling weight to treating specialists' opinions as demonstrated in the record according to 20 C.F.R. § 404.1527(d)(2)."  (Plf. Brief at 14).

A.   Residual Functional Capacity

Plaintiff argues that the ALJ's factual finding regarding his RFC is not supported by substantial evidence because the ALJ "mischaracterize[d] the evidence" (1) when he made his factual finding regarding plaintiff's credibility; (2) when he considered plaintiff's marijuana abuse; and (3) when he "disregarded" the results of a lumbar MRI.  (Plf. Brief at 14-15).  The argument that the ALJ mischaracterized or  "cherry picked" the record  is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence."  *White v.*

_____

'severe impairment.'  A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.'  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work."  *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

*Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence, deciding questions of credibility, or substituting the court's judgment for that of the ALJ. *See Ulman v. Commissioner*, 2012 WL 3871353, at * 4; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3). RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). The court finds that the ALJ's factual finding that plaintiff retained the RFC for a limited range of light work is supported by more than substantial evidence.

(1).    Credibility

This case turns on the ALJ's credibility determination regarding plaintiff's subjective complaints. Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 2012 WL 3871353, at * 5.

-11-

"Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ found that plaintiff's testimony regarding his functional limitations was not fully credible:

> The claimant alleged that bipolar disorder, back problems, and right foot problems limit his ability to work (Exhibit 3E)[A.R. 168-75]. Upon considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. However, the claimant's statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible.
>
> Activities of daily living are inconsistent with complaints. Per his mother, the claimant goes to the store to buy food (Exhibit 6E)[A.R. 192-99]. He vacuums, sweeps, cooks, does laundry, and drives (Exhibit 3F)[A.R. 282-88]. He testified that he drives to doctor's appointments and when going to shop.
>
> The claimant is not compliant. He misses therapy visits. (Exhibits 10F-11F)[A.R. 378-417].
>
> The claimant was not forthright about his drug abuse. He admitted to daily marijuana use, but then denied marijuana abuse several days later (Exhibits 9F, 8F)[A.R. 322-76].
>
> There were gaps in the treatment with minimal treatment from 2003 through 2005 and in 2008 for physical problems.
>
> Testimony was inconsistent and exaggerated. He testified that he can only walk a few feet. Progress notes did not demonstrate that he was incapacitated. X-rays longitudinally showed minimal degenerative changes (Exhibit 9F)[A.R. 363-76] until most recently (Exhibit

14F)[A.R. 451-57].  There was mention of "spinal stenosis" absent actual x-ray and physical findings of normal gait, normal range of motion and normal strength.  He reported that he drives here and there but that his mother takes care of him.  He thinks he cannot lift anything but has not been restricted by any doctor.

As mentioned above, there was a diagnosis of spinal stenosis later in the record, on February 25, 2009, but not supported by an actual x-ray.  No x-ray was in the file, and very recent x-ray, on February 13, 2009, showed no stenosis – unless he had damaged his back after he fell while lifting his 200-pound friend.

(A.R. 23).  It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination.  *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  Further, social security regulations make pellucid that the claimant bears the burden of demonstrating good reasons for his failure to follow prescribed treatment:  "If you do not follow the prescribed treatment without good reason, we will not find you disabled."  20 C.F.R. §§ 404.1530(b), 416.930(b).  The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible.  *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). The ALJ's observation that plaintiff failed to appear for counseling sessions was appropriate and well supported.  Plaintiff's failure to follow prescribed treatment undercut the credibility of his testimony regarding his subjective functional limitations.  *See Sias*, 861 F.2d at 480.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001).  The ALJ's credibility finding is supported by more than substantial evidence, and the ALJ gave a more than adequate explanation why he found that plaintiff's testimony was not fully credible.  *See Rogers v. Commissioner*, 486 F.3d 234, 247-49 (6th Cir. 2007).

-13-

(2).    Marijuana Abuse

Plaintiff argues that the ALJ "mischaracteriz[ed] the evidence" regarding his marijuana abuse. (Plf. Brief at 15). On January 15, 2003, plaintiff reported that he smoked marijuana on a daily basis and drank alcohol once a month. (A.R. 244). Physicians repeatedly instructed him to discontinue his alcohol and marijuana use. (A.R. 241, 243). Plaintiff received his most extensive and longest duration mental health care from prison psychiatrists and psychologists. On December 13, 2004, plaintiff admitted his long-term alcohol and marijuana dependence. (A.R. 505). He was diagnosed as having a mood disorder, NOS, polysubstance dependence, alcohol and marijuana, and a personality disorder. (A.R. 639). On February 14, 2005, plaintiff conceded "excessive" smoking of marijuana and "drinking alcohol socially" before he went to prison. (A.R. 633). On June 26, 2006, treating psychiatrist James Briggs, M.D., reported that plaintiff's diagnosis remained a mood disorder, NOS, polysubstance dependence, and a personality disorder, and that his GAF was 61. (A.R. 773). In September and October 2006, treating psychiatrist Melanie A. Clark, M.D., offered the same diagnosis and an unchanged GAF score. (A.R. 460, 464, 468). On October 17, 2006, plaintiff reported to a social worker that he had a 10-year history of daily marijuana use, and a 1-year history of alcohol use on weekends. (A.R. 347). On October 26, 2006, he "denied alcohol or illicit drug use." (A.R. 369). The ALJ found that plaintiff "was not forthright about his drug abuse."[6] The

---

[6]On February 8, 2007, plaintiff was questioned regarding his use of illegal drugs and he gave this response: "Yeah, I've used marijuana, cocaine, crystal meth, and I've used acid a couple of times." (A.R. 284). He then stated that he had not used drugs since he went to prison in 2004. (*Id.*).

ALJ's finding that plaintiff was not forthright about his drug abuse[7] is supported by substantial evidence.

               (3).    MRI

        Plaintiff argues that the ALJ's factual finding regarding his RFC is not supported by substantial evidence because he "disregarded" the results of an MRI:

> "[W]hen discussing the Plaintiff's diagnosis of spinal stenosis, the ALJ mischaracterizes the evidence when he adds, "No x-ray was in the file, and a very recent x-ray on February 13, 2009, showed no stenosis-unless he had damaged his back after he fell while lifting a 200-pound friend.  The ALJ then erred when he disregarded the lumbar MRI performed on February 21, 2009, revealed degenerative and herniated disc at L4-5 producing **significant spinal stenosis**.  Dr. DeLeeuw opined that Plaintiff's degeneration and herniation was **moderate to severe** and surgical decompression at the L4-5 level was probably indication. [sic].

(Plf. Brief at 15).  Plaintiff testified that he had a history of off-and-on back pain since he was a teenager.  He stated that he re-aggravated his back in prison in 2005.  (A.R. 35).  The ALJ noted that plaintiff's records indicated that he had a physically active prison life, which included playing on a prison softball team.  (A.R. 36).  Plaintiff did not have back surgery at any time during the period at issue. On February 25, 2009, Henry DeLeeuw, M.D., examined plaintiff.  (A.R. 741-43).  Plaintiff had a full range of motion in his lumbar spine and extremities without pain.  (A.R. 742).  He had normal muscle strength.  He was oriented in all three spheres.  His lumbar spine x-rays revealed "normal alignment."  (A.R. 742).  His lumbar spine MRI indicated a herniated disc at L4-5 producing significant spinal stenosis.  (A.R. 742).  Dr. DeLeeuw concluded his report with these

---

     [7]Even assuming that the ALJ misinterpreted plaintiff's statement regarding his "past" drug abuse (A.R. 347), the error was harmless.  *See Ulman v. Commissioner*, 2012 WL 3871353, at * 4-5. The other reasons listed by the ALJ provide more than substantial evidence supporting his factual findings regarding plaintiff's credibility and RFC.

comments: "Richard is a 33 year old man with [a] several year history of LBP [lower back pain] and bilateral leg pain secondary to disc degeneration and herniation L4-5. He has significant narrowing of his spinal canal which is [in] the moderate to severe category. Surgical decompression at the L4-5 level is probably indicated. This will make doing manual labor difficult. Encouraged him to quit smoking which also aggravates his back." (A.R. 743). Dr. DeLeeuw's report and the MRI results he described in it support rather than undermine the ALJ's finding that plaintiff retained the RFC for a limited range of light work.

B.     Treating Sources

Plaintiff argues that the ALJ's finding regarding his RFC is not supported by substantial evidence because the ALJ "disregarded" the opinions of three treating sources. (Plf. Brief at 16). He argues that the opinions expressed by Social Worker Michele Bowen, Nurse Practitioner Joseph Mashni, and Muktiraj Mehta, M.D., should have received "controlling weight" under the treating physician rule. (*Id.* at 17). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements

of a listed impairment because they are administrative issues reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not

-17-

necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

(1).    Social Worker Bowen

Plaintiff argues that the ALJ committed reversible error when he rejected the opinions of "treating physician" Michelle Bowen. (Plf. Brief at 16). Ms. Bowen is not a treating physician. She is a social worker. A social worker is not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); *see also Payne v. Commissioner*, 402 F. App'x 109, (6th Cir. 2010) ("[S]ocial workers are not acceptable medical sources under social security regulations."). There is no "treating social worker rule," and the opinion of a social worker is not entitled to any particular weight.[8] *See Hayes v. Commissioner*, No. 1:09-cv-1107, 2011 WL 2633945, at * 6 (W.D.

_____

[8]In his reply brief, plaintiff retreats from his untenable argument that opinions from "other sources" are entitled to controlling weight under the treating physician rule in favor of a new

Mich. June 15, 2011) (collecting cases).  Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)); *see also Bliss v. Commissioner*, 406 F. App'x 541 (2d Cir. 2011) ("[T]he assessment by the social worker is ineligible to receive controlling weight because social workers do not qualify as 'acceptable medical sources.'"); *Turner v. Commissioner*, 613 F.3d 1217, 1223-24 (9th Cir. 2010).  The opinions of a social worker fall within the category of information provided by "other sources."  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).  The social security regulations require that information from other sources be "considered."  2006 WL 2329939, at * 1, 4  (citing 20 C.F.R. §§ 404.1513, 416.913); *see Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir.

---

argument that the ALJ violated SSR 06-3p.  (Reply Brief at 4).  The issue is waived.  Raising a new argument in his reply brief is improper, and constitutes a violation of the court's Order Directing the Filing of Briefs. (docket # 10).  It is well established that a reply brief is not the proper place to raise new arguments.  *See e.g.*, *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).  A reply brief is the plaintiff's opportunity to respond to arguments raised for the first time in the defendant's brief.  A plaintiff cannot wait until the reply brief to make new arguments, thus effectively depriving the opposing party of the opportunity to expose the weaknesses of plaintiff's arguments.

Assuming the issue has not been waived, it is meritless.  The provisions of SSR06-3p relied upon by plaintiff are permissive rather than mandatory.  *See Vanportfliet v. Commissioner*, No. 1:10-cv-578, 2012 WL 1345315, at * 15 (W.D. Mich. Mar. 26, 2012); *accord Caillet v. Astrue*, No. 5:11-cv-2155, 2012 WL 4120383, at * 9 (N.D. Ohio Sept. 19, 2012); *Bernard v. Commissioner*, No. 11-12951, 2012 WL 3639054, at * 12 (E.D. Mich. July 25, 2012); *Shawn v. Commissioner*, No. 2:09cv485, 2010 WL 4623965, at * 10-12 (E.D. Va. Nov. 2, 2010).

2007).  This is not a demanding standard.  It was easily met here.  The ALJ found that Ms. Bowen's

opinion on the issue of disability reserved to the Commissioner was not entitled to any weight (A.R.

24) (citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)).[9]  The ALJ found that other restrictions

suggested by Ms. Bowen were not supported by the record:

> Ms. Bowen also determined that he needed assistance with daily activity and interpersonal
> functioning.  The undersigned points out that there is no evidence he was this incapacitated.
> Thought problem was not a persistent problem.  He mentioned that problem in April 2003,
> but symptoms occurred when he also admitted that he was doing drugs during that time that
> he later denied during therapy visits.  One month subsequent to Ms. Bowen's assessment, he
> reportedly shopped, did laundry, cooked simple meals, and drove (Exhibit 5E)[A.R. 184-91].
> Thereafter, he served jail time.  His condition was reportedly stable in 2007.  2008 treatment
> notes consisted of reported anger but no other problems mentioned other than he just felt
> angry towards others.

(A.R. 24).  The ALJ did not commit error when he found that the extreme restrictions proffered by

Ms. Bowen were not well supported.

### (2).  Nurse Practitioner Mashni

Joseph Mashni is a nurse practitioner.  (A.R. 363).  On March 4, 2009, he completed

a Physical Residual Functional Capacity Questionnaire.  (A.R. 745-49).  Mislabeling the

questionnaire so that it describes Mashni as an "M.D." (A.R. 744-49) and arguments referring to "Dr.

Mashini" (Plf. Brief at 11, 12, 17) did not magically transform Mr. Mashni's opinions into those of

an acceptable medical source.  Nurse practitioners are not acceptable medical sources.  *See* 20 C.F.R.

§§ 404.1513(d), 416.913(d).  Only acceptable medical sources can express medical opinions entitled

---

[9]"The numbering of the treating physician rules recently changed."  *Johnson-Hunt v. Commissioner*, No. 11-6160, 2012 WL 4039752, at * 6 n.6 (6th Cir. Sept. 14, 2012).  Effective March 26, 2012, sections 416.927(e) and 404.1527(e) became sections 416.927(d) and 404.1527(d).

to controlling weight under the treating physician rule. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011). Nurse practitioner opinions are "other source" opinions, *see* 20 C.F.R. §§ 404.1513(d), 416.913(d), and the requirement that other source opinions be considered is not a demanding standard. "[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Boseley v. Commissioner*, 397 F. App'x 195, 199 (6th Cir. 2010). Mr. Mashni's questionnaire response stated: "We are unable to perform functional capacity evaluation at this clinic." (A.R. 746). He offered an opinion that plaintiff was disabled. (A.R. 479). This opinion was entitled to no weight because the issue of disability is reserved to the Commissioner is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1), (3), 416.927(d)(1), (3); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

(3).    Dr. Mehta

On October 3, 2006, plaintiff reported to a prison nurse: "My mom works at Woodlands Mental Health, so she is going to take care of getting me set up there." (A.R. 462). On October 24, 2006, plaintiff received an intake assessment from a social worker at Woodlands. (A.R. 352). Based on the information plaintiff provided, the social worker offered a diagnosis of bipolar disorder, NOS and gave plaintiff a GAF score of 48. (A.R. 356). Plaintiff's primary interaction at Woodlands was individual therapy with social workers. He frequently failed to keep his appointments. (A.R. 379, 380, 390, 392, 396).

Muktiraj Mehta is a psychiatrist at Woodlands. His first contact with plaintiff occurred on August 21, 2007. (A.R. 361). The length of this visit is not specified, but plaintiff

-21-

arrived late for his appointment.  He stated that he was "doing well on Zyprexa and Depakote."

(A.R. 361).  He was casually dressed and neat in his appearance.  He was not in any acute physical

distress.  He related that he was able to control his temper and was getting along well with his

girlfriend.  Dr. Mehta offered the following diagnosis:

| | |
|---|---|
| Axis I | Bipolar Disorder NOS 296.80 |
| Axis II | Antisocial Personality Disorder 301.7 |
| Axis III | GERD, back pain |
| Axis IV | Psychosocial Stressors - none known |
| Axis V | GAF 50. |

(A.R. 361).  Dr. Mehta subsequently conducted five "medication reviews."  None of the visits with

plaintiff lasted longer than 15 minutes, and on every occasion Dr. Mehta gave plaintiff the GAF

score of 50: November 9, 2007, 15 minutes (A.R. 402); February 19, 2008, 15 minutes (A.R. 400);

May 9, 2008, 10 minutes (A.R. 394); August 12, 2008, 15 minutes (A.R. 384); and November 4,

2008, 15 minutes (A.R. 381).

On February 3, 2009, Dr. Mehta completed a "Mental Residual Functional Capacity

Questionnaire." (A.R. 419-23). Mehta stated that he saw plaintiff on a "quarterly" basis for 15-

minute visits.  (A.R. 419).  Plaintiff reported no side effects from his medication.  (A.R. 419).  He

was oriented in all spheres, was eating and sleeping well, and was able to engage in meaningful

conversation.  Plaintiff denied any recent drug use.  (A.R. 419).  Dr. Mehta offered a diagnosis of

bipolar disorder, NOS and antisocial personality disorder and gave plaintiff a GAF score of 50.

(A.R. 419).  He offered his opinion that plaintiff would be "unable to meet competitive standards"

regarding work attendance and being punctual within customary tolerances, setting realistic goals

and make plans independently of others, and interact appropriately with the general public.  (A.R.

421-23).  The ALJ found that these opinions were entitled to little weight given the lack of

-22-

supporting objective evidence and Dr. Mehta's relatively brief and infrequent interactions with plaintiff:

> The undersigned gives little weight to the treating physician (Dr. Muktiraj Mehta) opinion that the claimant is seriously limited and no useful ability to function in several mental abilities and aptitudes for unskilled work since the opinion is not consistent with the medical record (Exhibit 12F)[A.R. 419-23].  Therapy notes showed that his condition was stable in 2007 and his main problem reported was anger in 2008.  The opinion is conclusory with little explanation.  The opinion is not supported by his own objective clinical or laboratory findings.  He lists suicidal ideation as a symptom but there was no evidence of him being suicidal since May 2003.  He has only a short term treatment relationship.  He sees him "quarterly for 15 minutes."

(A.R. 24).  The ALJ complied with the requirements of the treating physician rule and provided good reasons for giving little weight to Dr. Mehta's opinions.

**4.**

Plaintiff argues that the ALJ committed reversible error "by failing to adhere to its own administrative procedures when the ALJ failed to provide all relevant evidence to the medical expert and when the ALJ failed to send evidence obtained after the hearing to the medical expert who attended the hearing."  (Plf. Brief at 18).  He argues that the medical expert (ME) did not receive copies of certain medical records and that the ALJ erred because, "Nowhere in HALLEX is an ALJ merely permitted to 'describe' medical evidence to an ME prior to eliciting the ME's testimony." (*Id.* at 19; *see* Reply Brief at 1-4).  This argument is meritless.  The fact that something is or is not mentioned in Hallex is not a basis for disturbing the Commissioner's decision.  "HALLEX" is the acronym for the Hearings, Appeals and Litigation Law Manual of the Social Security Administration.  *See Bowie v. Commissioner*, 539 F.3d 395, 397 (6th Cir. 2008).  "HALLEX does not impose judicially enforceable duties on either the ALJ or this [C]ourt."

*Lockwood v. Commissioner*, 616 F.3d 1068, 1072 (9th Cir. 2010); *see Edwards v. Astrue*, No. 3:10-cv-1017, 2011 WL 3490024, at * 6 (D. Conn. Aug.10, 2011) ("HALLEX policies are not regulations and therefore not deserving of controlling weight"); *McMurtry v. Astrue*, 749 F. Supp.2d 875, 880-81 (E.D. Wis. 2010) ("HALLEX manual is not binding on the agency and has no legal force").

Plaintiff's attorney was present at the hearing. (A.R. 30). He had the opportunity to provide the ME with copies of any relevant medical records and elicit testimony from the ME based on those records. Plaintiff's attorney's only questions to the ME related to the potential side effects of plaintiff's medications. (A.R. 60). The court finds no basis for disturbing the Commissioner's decision.

### Conclusion

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated:  October 17, 2012             /s/  Joseph G. Scoville
                                     United States Magistrate Judge